# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT THOMAS CASTLE, | 1:10-cv-00648 AWI GSA HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| J. HARTLEY, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## RELEVANT HISTORY[1]

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation (CDCR) following his conviction in San Diego County Superior Court in 1981 of first degree murder. Petitioner is serving an indeterminate sentence of twenty-five years to life with the possibility of parole.

Petitioner does not challenge his underlying conviction; rather, he challenges a February 10, 2009, decision of the Board of Parole Hearings (Board) denying parole. Petitioner claims the Board violated his due process rights in its 2009 decision finding him unsuitable for

---

[1] This information is taken from the state court documents attached to Respondent's answer and are not subject to dispute.

1

parole. He claims the Board failed to enter in its decision the fact it had considered Cal. Penal Code § 1203.01. He further claims there is no evidence to support the Board's finding that he poses a current danger if released from prison. He also claims that the Board continues to rely on unchanging factors despite uncontroverted evidence of suitability.

Petitioner filed a habeas court petition challenging the Board's 2009 decision in the San Diego County Superior Court. The petition was denied in a reasoned decision on September 22, 2009. Petitioner then filed a state habeas petition in the California Court of Appeal, Fourth Appellate District, on January 11, 2010. The petition was denied in a reasoned opinion on February 9, 2010. He next filed a habeas petition on February 18, 2010, in the California Supreme Court. The petition was summarily denied on March 24, 2010.

Petitioner filed the instant federal petition for writ of habeas corpus on April 14, 2010. Respondent filed an answer to the petition on June 29, 2010. Petitioner filed a traverse on July 22, 2010.

## STATEMENT OF FACTS[2]

In 1981, Petitioner and two accomplices were drinking in Balboa Park. They ran out of alcohol and decided to rob someone to get money for more. At the time, the park was known as a place where homosexuals congregated. Petitioner and his friends decided to target a homosexual man. Petitioner subsequently met up with two men and agreed to go home with them. He got into their car and his accomplices surreptitiously followed them in another car.

When Petitioner arrived at the men's home, one of the men went inside while Petitioner and the victim stayed outside talking. Petitioner's friends drove up and demanded the victim's wallet. The victim resisted, prompting Petitioner to pull a knife from his pocket and stab the victim in the chest, abdomen, right arm and left hand. Petitioner also stabbed one of his accomplices in the leg after the accomplice stepped between Petitioner and the victim. Petitioner and his accomplices took approximately $20 from the victim and then left the scene to obtain medical treatment for the injured accomplice. The victim died from his injuries.

---

[2] This information is taken from the opinion of the appellate court.

**DISCUSSION**

I.    <u>Standard of Review</u>

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* <u>Drinkard v. Johnson</u>, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. <u>Sass v. California Board of Prison Terms</u>, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* <u>White v. Lambert</u>, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see <u>Lockyer</u>, 538 U.S. at 70-71; <u>Williams</u>, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal

law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.   Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

II.     Review of Petition

There is no independent right to parole under the United States Constitution; rather, the right exists and is created by the substantive state law which defines the parole scheme. Hayward v. Marshall, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing Bd. of Pardons v. Allen, 482 U.S. 369, 371 (1987); Pearson v. Muntz, No. 08-55728, 2010 WL 2108964, * 2 (9th Cir. May 24, 2010) (citing Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005)); Cooke v. Solis, No. 06-15444, 2010 WL 2330283, *6 (9th Cir. June 4, 2010). "[D]espite the necessarily subjective and predictive nature of the parole-release decision, state statutes may create liberty interests in parole release that are entitled to protection under the Due Process Clause." Bd. of Pardons v. Allen, 482 U.S. at 371.

In California, the Board of Parole Hearings' determination of whether an inmate is suitable for parole is controlled by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the

4

>prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs. tit. 15, §§ 2402(a) and (b). Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for release. "Circumstances tending to indicate unsuitability include:

> (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
>
>> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
>> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
>> (C) The victim was abused, defiled or mutilated during or after the offense.
>> (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
>> (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
>
> (2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
>
> (3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.'
>
> (4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.
>
> (5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.
>
> (6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(9).

>Section 2402(d) sets forth the circumstances tending to show suitability which include:
>
>(1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.
>
>(2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.
>
>(3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.
>
>(4) Motivation for Crime. The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period of time.

5

  (5) Battered Woman Syndrome.  At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

  (6) Lack of Criminal History.  The prisoner lacks any significant history of violent crime.

  (7) Age.  The prisoner's present age reduces the probability of recidivism.

  (8) Understanding and Plans for Future.  The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

  (9) Institutional Behavior.  Institutional activities indicate an enhanced ability to function within the law upon release.

Cal. Code Regs. tit. 15, § 2402(d)(1)-(9)

  The California parole scheme entitles the prisoner to a parole hearing and various procedural guarantees and rights before, at, and after the hearing. Cal. Penal Code § 3041.5.  If denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute.  Id.  In addition, if the Board or Governor find the prisoner unsuitable for release, the prisoner is entitled to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5.  The denial of parole must also be supported by "some evidence," but review of the Board's or Governor's decision is extremely deferential.  In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.3d 104, 59 P.3d 174, 210 (2002).

  Because California's statutory parole scheme guarantees that prisoners will not be denied parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals recently held California law creates a liberty interest in parole that may be enforced under the Due Process Clause.  Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 606 F.3d 606, 608-609 (9th Cir. 2010).  Therefore, under 28 U.S.C. § 2254, this Court's ultimate determination is whether the state court's application of the some evidence rule was unreasonable or was based on an unreasonable determination of the facts in light of the evidence.  Hayward v. Marshall. 603 F.3d at 563; Pearson v. Muntz, 606 F.3d at 608.

  The applicable California standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings."  In re Lawrence, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted).  As to the circumstances of the commitment offense, the Lawrence Court concluded that

>although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.

In addition, "the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prison remains a danger to the public. It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public." In re Lawrence, 44 Cal.4th at 1212.

"In sum, a reviewing court must consider 'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'" Cooke v. Solis, 606 F.3d 1206, 1214 (9th Cir. 2010) (emphasis in original) (citing Hayward v. Marshall, 603 F.3d at 560).

### A. Last Reasoned State Court Decision

In the last reasoned decision, the California Court of Appeal, Fourth Appellate District, rejected Petitioner's claims as follows:

>On February 10, 2009, the Board of Parole Hearings (Board) conducted a subsequent parole consideration hearing and declined to set a parole date, finding Castle posed a risk of present danger to society if released from prison based on the circumstances of the crime, Castle's prior criminality and unstable social history, his past and present attitude about the crime, his lack of remorse for the victim's lover, statements in Castle's 2007 psychological evaluation and Castle's weak parole plans. The Board set Castle's next parole hearing in three years.
>
>Castle contends that there is no evidence to support the Board's conclusion that he is a current danger to society. He urges that the Board's "[c]ontinued reliance on unchanging factors to deny parole[] when uncontroverted evidence of rehabilitation exists . . . ." deprives him of due process.
>
>In examining the Board's decision, the standard of review is "whether there exists 'some evidence' that an inmate poses a current threat to public safety, rather than merely some evidence of the existence of a statutory unsuitability factor." [Citations.] "[T]he relevant inquiry is whether the circumstances of the commitment offense, when

7

considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after commission of the offense. This inquiry is, by necessity and by statutory mandate, an individualized one, and cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude." [Citation.]

After interviewing Castle for nearly two hours, the Board commended Castle for his insight but concluded that, "what you also do is you minimize your conduct, because of all those problems that you've discovered . . . . [T]o get the insight is good, but when you take the insight and you start saying things like . . . that alcohol played a big part in your life, and bigotry, and an overbearing father, and dysfunctional family issues, . . . you almost place blame on that. In that way it minimizes your conduct." The Board also observed that "there's an anger inside of you that's subtle" and "[i]t's a feeling that the Panel got, we both did, that there's just something that you haven't really dealt with."

Castle's most recent psychological evaluation indicated that his risk for future violence is in the moderate range.

If paroled, Castle intended to apply to participate in either the San Diego Freedom Ranch or Second Chance/STRIVE programs, both of which apparently provide housing and employment placement services for recent parolees. Alternatively, he planned to live with a family friend, where his brother and sister also live. Castle's most recent psychological evaluation expressed the concern that Castle had a lack of personal support as he relied heavily on his brother and on agencies for support. Neither Castle's brother nor sister provided recent letters of support.

The Board made an individualized inquiry into Castle's suitability for parole and its decision to deny parole is supported by Castle's present attitude toward the commitment offense, his recent psychological evaluation, his weak parole plans and lack of personal support.

(See Resp't's Ex. 4.)

B.   2009 Board Hearing

As discussed by the appellate court, the Board determined Petitioner was unsuitable for parole based on the circumstances of the commitment offense, prior criminality and unstable social history, past and present attitude toward the crime, lack of remorse for the victim's lover, psychological evaluation, and weak parole plans.

The Board determined that the commitment offense was especially heinous, atrocious and cruel, because the manner in which it was carried out demonstrated an exceptionally callous disregard for human suffering. Cal. Code Regs., tit. 15, § 2402(c)(1)(D). In support of this finding, the Board stated that Petitioner had repeatedly stabbed the victim and that "stab wounds are extremely painful." (See Traverse, Board Decision at 74.) However, there does not appear to be any evidence that Petitioner prolonged the victim's suffering or tortured him in any way such

1   that the murder can be characterized in such a manner. Thus, this factor is unsupported. The
2   Board also found that multiple victims were injured. Cal. Code Regs., tit. 15, § 2402(c)(1)(A).
3   The Board noted that the robbery victim was attacked and killed, and also Petitioner's
4   accomplice was stabbed when he interceded. The evidence supports this finding. In addition,
5   the Board determined that the motive for the killing was trivial. Cal. Code Regs., tit. 15,
6   § 2402(c)(1)(E). The Board found that the only identifiable motive for the crime was either for
7   the purpose of robbing the victim or because the victim was a homosexual. In either case, there
8   is some evidence to support this finding. Therefore, the appellate court reasonably determined
9   that some evidence supported the Board's finding that the commitment offense was especially
10  heinous, atrocious, or cruel pursuant to Cal. Code Regs., tit. 15, § 2402(c)(1).

11         The Board also noted that Petitioner had an extensive prior criminal history including
12  violent behavior, as well as an unstable social history. Cal. Code Regs., tit. 15, § 2402(c)(2)-(3).
13  He had sustained juvenile convictions for burglary and attempted burglary. He had been arrested
14  for battery, disorderly conduct, loitering on private property, vandalism, and assault with a deadly
15  weapon. Petitioner had failed to profit from society's numerous attempts to correct his
16  criminality. The evidence also supports these findings.

17         The California Supreme Court has held that "[t]he nature of the prisoner's offense, alone,
18  can constitute a sufficient basis for denying parole." In re Rosenkrantz, 29 Cal.4th 616, 682
19  (2002). However, in cases where prisoners have served their suggested base terms and have
20  demonstrated strong evidence of rehabilitation and no other evidence of current dangerousness,
21  the underlying circumstances of the commitment offense alone rarely will provide a valid basis
22  for denying parole. In re Lawrence, 44 Cal.4th 1191, 1211 (2008). In this case, the Board did
23  not rely on the commitment offense or prior criminal history alone.

24         The Board also considered Petitioner's past and present attitude toward the crime, his
25  insight into the causative factors of the crime, and his present attitude toward the victim's lover,
26  pursuant to Cal. Code Regs., tit. 15, § 2402(b). After interviewing Petitioner for two hours, the
27  Board made the following observations:
28         I don't know if anybody's ever observed this or mentioned to you, but you do have a lot

9

>of insight. You have taken a lot of therapy and a lot of counsel, and you have come to understand things that happened in your life, either under your control or not under your control, that contributed to the factors that led up to this crime, and that's good. But what you also do is you minimize your conduct, because of all those problems that you've discovered. And it's kind of a fine line. It's, you know, to get the insight is good, but when you take the insight and you start saying things like, well - - and this is repeatedly [sic] you said these things - - that alcohol played a big part in your life, and bigotry, and an overbearing father, and dysfunctional family issues, and that's kind of - - you almost place blame on that. In that way it minimizes your conduct. And I don't know if you're even aware of that, but that's what we see. Again, you have taken good steps to try and dig into your insight. I'm not sure that I agree that you've gone quite deep enough. I have to, I have to agree with Deputy District Attorney Moses, in that I too feel that there's something else still there. That there's an anger inside of you that's subtle, but it's there. And you still have a lot of feelings about certain situations. And I really have concerns about how you would react to them, even to this day. And it's very hard to articulate specifically. It's just a feeling that the Panel got, we both did, that there's just something that you haven't really dealt with. And I'm not sure if it has to do with the different races, or if it has to do with sexuality. I don't know. I don't know if you know. But I think that before the Panel's going to be comfortable with you becoming a citizen, I think you need to at least further explore that and try to figure out what it is.

(See Traverse, Board Decision at 77-78.)

>As to the victim's lover, the Board made the following observations:

>I don't feel the same remorse from you for his lover, who was also a victim in this case. There's a coldness, and almost a callousness, and you can see it. Your body language changes. And your demeanor changes when we were talking about Mr. Boer's homosexual life, as opposed to his family life, his mom and his dad and his sisters. And maybe it's because you can't relate to it, but it's there. There's something that's just not, not there.

(See Traverse, Board Decision at 78-79.)

The Board is charged with determining whether Petitioner will pose an unreasonable risk of danger to the public if released. The Board's purpose in these hearings is to review not only what is said, but how it is said. Petitioner's past and present attitude toward the crime was appropriately considered pursuant to § 2402(b). The Board determined that Petitioner's attitude and lack of insight demonstrated him to be an unreasonable risk of danger. The appellate court determination that some evidence supported this finding was not unreasonable.

The Board also considered the psychological report which determined that Petitioner posed a moderate risk of danger to the public if released. A moderate risk is certainly not a low or very low risk of danger. The psychological report provides some evidence for the Board's determination that Petitioner continues to remain a danger to the public.

Finally, the Board determined that Petitioner's parole plans were weak. Petitioner did not

have a firm offer of residence or employment. He had an offer of residence from a woman but Petitioner could not provide any details of the place, such as where he would be living and with whom. Petitioner's sister and brother also lived at this residence, but Petitioner did not have letters of support from them. This factor is not an enumerated factor demonstrating unsuitability, but it could be considered as relevant information pursuant to § 2402(b).

The Board also considered factors in support of suitability. Petitioner was commended for a clean disciplinary record extending over twenty years. He had an exemplary work record. He had programmed extensively including continuous participation in Alcoholics Anonymous since 1985. He had obtained several marketable vocations. Nevertheless, the Board concluded that the positive aspects of Petitioner's behavior did not outweigh the factors of unsuitability. In light of the circumstances of Petitioner's commitment offense, his violent criminal past, his unstable social history, his past and present attitude toward the crime, his negative psychological evaluation, and his weak parole plans, the state courts' determination that there was some evidence to support the Board's 2009 decision is not an unreasonable application of California's some evidence standard, nor an unreasonable determination of the facts in light of the record. Although Petitioner maintains that factors such as the commitment offense and unstable social history are too old to offer any value, they are relevant to predicting a risk of future violence when tied to the other factors. Accordingly, federal habeas corpus relief is unavailable.

As to Petitioner's claim that the Board failed to enter in its decision the fact it had considered Cal. Penal Code § 1203.01, this claim is not cognizable in a federal habeas action. The Supreme Court has stated "many times that 'federal habeas corpus relief does not lie for errors of state law.'" Estelle v. McGuire, 502 U.S. 62, 67 (1991), *quoting* Lewis v. Jeffers, 497 U.S. 764, 780 (1990); see also Gilmore v. Taylor, 508 U.S. 333, 348-49 (1993) (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas").

**RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.  The instant petition for writ of habeas corpus be DENIED; and

2.     The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within fourteen (14) days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **September 29, 2010**                    **/s/ Gary S. Austin**
                                                                    UNITED STATES MAGISTRATE JUDGE